UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

BRICKLAYERS AND ALLIED CRAFTWORKERS
LOCAL 2, ALBANY, NEW YORK PENSION FUND, by
its Administrator, Meghan Lefsyk; BRICKLAYERS AND
ALLIED CRAFTWORKERS LOCAL 2, ALBANY, NEW
YORK HEALTH BENEFIT FUND, by its Administrator
Meghan Lefsyk; BRICKLAYERS AND ALLIED
CRAFTWORKERS LOCAL 2 ANNUITY FUND, by its
Administrator, Meghan Lefsyk; BRICKLAYERS AND
ALLIED CRAFTWORKERS LOCAL 2, ALBANY, NEW
YORK EDUCATION & TRAINING FUND, by its
Trustees, Pasquale Tirino, Kevin Potter, Thomas Marinello,
Todd Helfrich and Laura Regan; BRICKLAYERS AND
TROWEL TRADES INTERNATIONAL PENSION FUND,
by David Stupar, Executive Director; BRICKLAYERS
AND ALLIED CRAFTWORKERS LOCAL 2, ALBANY
NEW YORK, AFL-CIO, by Pasquale Tirino, President;
EASTERN CONTRACTORS ASSOCIATION, INC.; and
CONSTRUCTION EMPLOYERS ASSOCIATION OF
CNY, INC.;

1:23-CV-01039
(AMN/PJE)

                      Plaintiffs,

v.

RJ YOUNG CONSTRUCTION, LLC; ROBERT J.
YOUNG, individually and as an Officer of RJ Young
Construction, LLC; and LEMARR J. YOUNG, individually
and as an Officer of RJ Young Construction, LLC;

                      Defendants.

---

**APPEARANCES:**

**BLITMAN & KING LLP**
Franklin Center, Suite 300
443 North Franklin Street
Syracuse, NY 13204
*Attorneys for Plaintiff*

**OF COUNSEL:**

**DANIEL E. KORNFIELD, ESQ.**

1

**STANCLIFT LAW, PLLC**  **TUCKER C. STANCLIFT, ESQ.**
704 Upper Glen St. – Suite 1
Queensbury, NY 12804
*Attorneys for Defendants*

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.   INTRODUCTION**

On August 23, 2023, Bricklayers and Allied Craftworkers Local 2, Albany, New York Pension Fund ("Pension Fund"), by its Administrator, Meghan Lefsyk; Bricklayers and Allied Craftworkers Local 2, Albany, New York Health Benefit Fund ("Health Benefit Fund"), by its Administrator, Meghan Lefsyk; Bricklayers and Allied Craftworkers Local 2 Annuity Fund ("Annuity Fund"), by its Administrator, Meghan Lefsyk; Bricklayers and Allied Craftworkers Local 2, Albany, New York Education & Training Fund ("Education & Training Fund"), by its Trustees, Pasquale Tirino, Kevin Potter, Thomas Marinello, Todd Helfrich and Laura Regan; Bricklayers and Trowel Trades International Pension Fund ("IPF"), by David Stupar, Executive Director; Bricklayers and Allied Craftworkers Local 2, Albany New York, AFL-CIO ("Union"), by Pasquale Tirino, President; Eastern Contractors Association, Inc.; and Construction Employers Association of CNY, Inc. (collectively, "Plaintiffs") commenced an action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and Section 301(a) of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a), against RJ Young Construction, LLC; Robert J. Young, individually and as an officer of RJ Young Construction LLC; and Lemarr J. Young, individually and as an officer of RJ Young Construction, LLC (collectively, "Defendants"). *See* Dkt. No. 1 ("Complaint"). The Complaint alleges that Defendants failed to remit fringe benefit contributions and deductions due for work in covered employment during the period September 1, 2017 through December 31, 2023, in violation of a

collective bargaining agreement between, *inter alia*, Plaintiff Union and Defendant RJ Young Construction, LLC. *See id.* at ¶¶ 35, 75.

On November 2, 2023, pursuant to a stipulation between the Parties extending their time to do so, Defendants answered the Complaint, denying the allegations. *See* Dkt. No. 11 ("Answer"). On January 16, 2024, counsel for Defendants filed a motion to withdraw as attorney for Defendants, *see* Dkt. Nos. 15-16, which was granted by United States Magistrate Judge Christian F. Hummel on February 9, 2024, *see* Dkt. No 19. Defendants subsequently retained new counsel, who appeared on behalf of Defendants on March 20, 2024. *See* Dkt. No. 23. On June 30, 2024, Magistrate Judge Hummel issued a Uniform Pretrial Scheduling Order setting forth certain deadlines and detailing this Court's typical pretrial and trial practices, *see* Dkt. No. 31. Shortly thereafter, the Parties became entangled in a series of discovery disputes, necessitating three discovery hearings before Magistrate Judge Hummel. *See* Dkt. Nos. 35, 37, 42.[1]

On August 29, 2024, Plaintiffs filed the instant motion to strike Defendants' Answer and for default judgment, alleging that Defendants have failed to respond to a series of discovery requests and have otherwise failed to defend the action. *See* Dkt. No. 40 ("Motion"). Alongside the Motion, Plaintiffs attached an affidavit from their payroll auditors attesting to their efforts in calculating Plaintiffs' damages referenced above. *See generally* Dkt. No. 40-1. Defendants filed an opposition pursuant to a Court-ordered briefing schedule on September 27, 2024, along with certain, recently issued discovery requests and responses. *See* Dkt. Nos. 44-47. Plaintiffs filed a reply in support of the Motion on October 28, 2024. *See* Dkt. No. 50. On November 11, 2024 and January 29, 2025, Plaintiffs filed status reports with the Court noting that, for accuracy, Plaintiffs'

---

[1] On January 17, 2025, this matter was reassigned to United States Magistrate Judge Paul J. Evangelista. *See* Dkt. No. 54.

3

auditors analyzed the discovery requests and responses that Defendants docketed alongside their opposition and that such did not alter Plaintiffs' estimated damages. *See* Dkt. Nos. 52, 55. The Motion is now ripe for adjudication.

For the reasons set forth below, the Motion is denied.

## II.   BACKGROUND

Unless otherwise noted, the following facts are drawn from the Complaint, its attachments, or materials it incorporates by reference, and are assumed to be true for purposes of ruling on the Motion, *see Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam), or are otherwise matters of public record, *Williams v. N.Y.C. Hous. Auth.*, 816 Fed. Appx. 532, 534 (2d Cir. 2020).

### A.   The Parties

Plaintiff Union is an Albany-based unincorporated association and labor organization within the meaning of the LMRA. Dkt. No. 1 at ¶ 12. The Pension Fund, Health Benefit Fund, Annuity Fund, Education & Training Fund, (collectively, the "Local 2 Funds") and IPF (collectively with the Local 2 Funds, the "Funds") are multiemployer benefit plans administered in Albany pursuant to ERISA and established pursuant to a collective bargaining agreement to which the Union is a signatory. *Id.* at ¶ 11. The Local 2 Funds receive, and are collection agents for, the International Council of Employers of Bricklayers and Allied Craftworkers monies, and the IPF has been delegated the authority to collect the monies due and owing to the Union and the International Masonry Institute. *Id.* at ¶¶ 10-11.

Plaintiff Meghan Lefsyk is the Administrator of the Pension Fund, Health Benefit Fund, and Annuity Fund, and has been directed and authorized by the Funds' respective boards of trustees to bring this action on their behalf. *Id.* at ¶¶ 6-8. Plaintiffs Pasquale Tirino, Kevin Potter, Thomas

4

Marinello, Todd Helfrich, and Laura Regan are Trustees of the Education & Training Fund, as well as fiduciaries of the Education & Training Fund pursuant to ERISA Section 3(21)(A). *Id.* at ¶ 9. Plaintiff David Stupar is the Executive Director of the IPF and has been directed and authorized by the IPF's board of trustees to bring this action on its behalf. *Id.* at ¶ 10.

Plaintiff Eastern Contractors Association, Inc. ("ECA") is a corporation incorporated under the laws of the State of New York with a principal place of business in Albany, New York. *Id.* at ¶ 13. Plaintiff Construction Employers Association of CNY, Inc. ("CEA") is a corporation incorporated under the laws of the State of New York with a principal place of business in Syracuse, New York. *Id.* at ¶ 14. Both ECA and CEA receive industry fund monies. *Id.* at ¶¶ 13-14.

Defendant RJ Young Construction, LLC (hereinafter, the "Company") is a business incorporated under the laws of the State of New York, with a principal place of business in Granville, New York, authorized to do business in the State of New York. *Id.* at ¶ 15; Dkt. No. 11 at ¶ 15. Defendant Robert J. Young resides in Granville, New York and, at all relevant times, was a shareholder and/or officer of Defendant Company. Dkt. No. 1 at ¶ 16; Dkt. No. 11 at ¶ 16. Defendant Lemarr J. Young resides in Queensbury, New York and, at all relevant times, was a shareholder and/or officer of Defendant Company. Dkt. No. 1 at ¶ 17; Dkt. No. 11 at ¶ 17. According to Plaintiffs, Defendants are all employers in an industry affecting commerce, as defined in ERISA Sections 3(5)(11) and (12), and are employers of employees covered by the benefit plans and multiemployer plans maintained pursuant to a collective bargaining agreement with the Union, as defined in ERISA Sections 3(3) and (37). Dkt. No. 1 at ¶ 18. Accordingly, Defendants are obligated to make contributions to the Funds in accordance with ERISA Section

515 and are parties in interest with respect to the Funds as defined in ERISA Sections 3(14)(C), (E), and (H).  *Id.* at ¶¶ 18-19.

### B. The Complaint

Overall, Plaintiff asserts five total causes of action against Defendants pursuant to ERISA Sections 404(a), 406, 409, 502(g)(2), 515, LMRA Section 301(a), as well as New York Lien Law Article 3-A.  *See* Dkt. No. 1 at ¶¶ 21-75.

Specifically, Plaintiffs contend that Defendant Company was a party to a collective bargaining agreement between Plaintiffs ECA, CEA and Plaintiff Union (the "CBA").  *Id.* at ¶ 23.  Pursuant to the CBA, Defendant Company is bound by specific trusts and collections policies of the Funds, which together obligate Defendant Company to, *inter alia*, submit reports and remit contributions to Plaintiff Funds for each hour that its employees perform work covered by the CBA.  *See id.* at ¶¶ 24-32 (outlining other relevant obligations contained in the CBA).  According to Plaintiffs, an audit report was submitted on January 16, 2020, which notified Plaintiffs that Defendant Company was delinquent on $57,458.91 in contributions and deductions for the period September 1, 2017 through October 31, 2019 and, to date, Defendant Company has not paid those fringe benefit contributions or associated penalties pursuant to the CBA, the Pension Protection Act, and ERISA Sections 515 and 502(g)(2).  *Id.* at ¶¶ 32-35.

The Complaint additionally alleges that Defendant Company has failed to produce its books and records for Plaintiffs' review and audit, including records of the number of hours of bargaining unit work that was performed by Defendants' employees, in violation of the CBA, the Funds' trusts and collections policies, and ERISA.  *Id.* at ¶¶ 36-46.

With respect to Defendants Robert J. Young and Lemarr J. Young (the "Individual Defendants"), Plaintiffs allege that they are fiduciaries of an ERISA-covered plan and, as such,

they are responsible for the remission of all contributions and trust assets belonging to the Funds. *Id.* at ¶¶ 47-58. Plaintiffs accuse the Individual Defendants of withholding assets from the Funds and assert that they are therefore liable for breaching their fiduciary duties under ERISA Sections 404, 406, and 409, as well as the New York State Lien Law. *Id.* at ¶¶ 57-75.

Based on the foregoing, Plaintiffs seek a total of $338,343.91 from Defendant Company and $278,936.08 from the Individual Defendants, which represent the total delinquent fringe benefit contributions and deductions, as well as the associated interest penalties, liquidated damages, attorneys' fees, and costs owed pursuant to the CBA for the period September 1, 2017 through December 31, 2023. *Id.* at 18-19.[2]

### C.  Withdrawal Motion & Discovery Disputes

The Parties filed their respective Civil Case Management Plans on November 30, 2023 in anticipation of the initial conference pursuant to Fed. R. Civ. P. 16. Dkt. Nos. 12-13. On December 7, 2023, the Parties appeared before United States Magistrate Judge Christian F. Hummel for the Rule 16 conference, wherein counsel for Defendants advised the Court that he could no longer represent Defendants and would be filing a motion to withdraw. *See* docket sheet. Counsel for Defendants filed his motion to withdraw on January 16, 2024, which cited Defendants' "lack of cooperation, communication and assistance in preparing their defense" as the primary reason for the motion. *See* Dkt. No. 15. Counsel for Defendants attached to his motion to withdraw various emails between himself and the Individual Defendants, which showed the Individual Defendants' lack of responsiveness to counsel's attempt to establish a monthly payment plan pursuant to a signed retainer agreement. *See* Dkt. No. 16. Plaintiffs objected to the motion to

---

[2] Citations to court documents utilize the pagination generated by CM/ECF, the Court's electronic filing system.

7

withdraw because it would result in Defendants appearing in the litigation without legal counsel, which Magistrate Judge Hummel had previously indicated Defendants would not be permitted to do. *See* Dkt. No. 17 ("If the Defendants fail to comply with this requirement, Plaintiffs then suggest that the Court strike their Answer and enter the default in accordance with Rule 55"). On February 9, 2024, Magistrate Judge Hummel granted the motion to withdraw, and directed Defendants to retain new counsel within 30 days. Dkt. No. 19.

The Parties appeared for a status conference before Magistrate Judge Hummel on March 7, 2024, wherein Defendants requested additional time to retain new counsel. *See* docket sheet. Also at the March 7 status conference, Plaintiffs indicated that Defendants had provided some of the discovery Plaintiffs had requested and Defendants indicated they were working on getting Plaintiffs further outstanding documents. *See id.* Defendants subsequently retained new counsel, who filed a notice of appearance in this action on March 20, 2024. *See* Dkt. No. 23. The Court held a status conference that same day, wherein Defendants' newly retained counsel requested additional time to catch up with the case status and gather requested discovery to meet Plaintiffs' demands. *See* docket sheet. Magistrate Judge Hummel granted the request and directed the Parties to appear before him on April 17, 2024. *See* Dkt. No. 24. At the April 17 status conference, Plaintiffs advised the Court that Defendants provided further discovery, but certain requests remained outstanding. *See* Dkt. No. 25. The Court set another status conference for May 17, 2024, but counsel for Defendants failed to appear based on a conflict with another matter. *See* docket sheet. On June 18, 2024, the Court held another Rule 16 conference and established pretrial deadlines. *See id.* A Uniform Pretrial Scheduling Order was issued outlining those pretrial deadlines on June 30, 2024. *See* Dkt. No. 31. According to the Uniform Pretrial Scheduling Order, the deadline to submit amended pleadings was August 1, 2024, and discovery was to be completed

8

by November 29, 2024.  *Id.*  The Order does not set forth deadlines for mandatory disclosures or initial written discovery demands.  *Id.* at 2.

On July 15, 2024, Plaintiffs filed a letter requesting a telephone conference with Magistrate Judge Hummel based on outstanding discovery requests that were served on Defendants on December 1, 2023.  *See* Dkt. No. 32.  Magistrate Judge Hummel granted Plaintiffs' request, and attempted to hold a discovery conference on August 23, 2024 to address the dispute.  *See* docket sheet.  However, counsel for Defendants failed to appear.  *See id.*  As such, the Court rescheduled the conference and directed counsel for Defendants to appear in person at a discovery conference on September 6, 2024.  *See id.*  Defense counsel appeared on September 6, 2024, and advised the Court that he has been unable to contact his clients to discuss the status of outstanding discovery or current posture of the case.  *See id.*  On September 27, 2024, presumably to establish their efforts to participate in discovery, Defendants filed on the docket their answers to interrogatories and responses to certain outstanding discovery requests, which were dated September 25, 2024.  *See* Dkt. Nos. 45-47.

**D.  The Instant Motion**

Following defense counsel's failure to appear at the August 23 discovery conference, Plaintiffs filed the instant Motion on August 29, 2024, requesting that the Court strike Defendants' Answer and enter a default judgment in Plaintiffs' favor.  Dkt. No. 40.  Plaintiffs argue that such relief is warranted based on the Court's previous warnings to Defendants regarding their failure to meet their discovery obligations, as well as Defendants' refusal to answer certain discovery requests and otherwise participate in the requirements of this litigation.  *Id.* at 8.  Plaintiffs additionally argue that, based on Defendants' failure to maintain or disclose sufficient records for auditors to determine the exact amounts owed, as well as Defendants' refusal to dispute the

amounts from the audit report, the Court should rely on the reasonable estimates submitted by Plaintiffs' auditors in support of the Motion to discern Plaintiffs' damages. *Id.* at 11. Plaintiffs also claim that they are entitled to attorneys' fees and costs associated with the collection of the fringe benefit contributions and deductions pursuant to the CBA, ERISA Section 502(g)(2), and LMRA Section 301(a). *Id.* at 11-14.

On September 27, 2024, Defendants opposed the Motion, arguing that (1) striking the Answer and entering default judgment is an excessively harsh and premature remedy; and (2) counsel for Defendants has made multiple good faith efforts to advise Defendants to comply with the outstanding discovery requests. *See* Dkt. No. 44 at 4-8. Procedurally, Defendants allege the Motion is premature and incomplete since the Court has not issued any order compelling disclosure or discovery under Fed. R. Civ. P. 37(a) and because Plaintiffs have not provided a certification establishing that they attempted to confer in good faith to resolve the disputes without court action. *Id.* at 5, 7. Substantively, Defendants argue that the factors considered by courts when analyzing a Rule 37(b) motion weigh in favor of Defendants, since Defendants' alleged non-compliance with discovery demands was not willful, the deadline for discovery had not yet passed when the Motion was filed, and Defendants have not been subjected to multiple warnings by the Court. *Id.* at 6-7. In support of the opposition, Defendants attached an affidavit from Defendant Lemarr Young, outlining certain discovery efforts, disputing the contents of Plaintiffs' audit report, and attesting that Defendant Robert Young has been battling a serious illness, which has delayed Defendants' ability to obtain the requested documentation. *Id.* at 20-22. Defendants also attached an affidavit from defense counsel's legal assistant, describing various efforts defense counsel has made to obtain information from his clients. *Id.* at 24-27.

On October 28, 2024, Plaintiffs submitted a reply in further support of the Motion, arguing that while the deadline for discovery to close had not yet passed, the Court had previously ordered Defendants to provide the outstanding discovery by July 12, 2024.  Dkt. No. 50 at 7.  Plaintiffs also argue that the Court should disregard the discovery responses filed by Defendants on the docket because they are "woefully inadequate" in that they fail to comply with basic aspects of the disclosure requirements.  *Id.*  Moreover, Plaintiffs contend that the affidavit of Defendant Lemarr Young is improper and should not be considered because it contains inadmissible hearsay and violates the best evidence rule.  *Id.* at 9-10.

### III.     STANDARD OF REVIEW

Fed. R. Civ. P. 37(b)(2)(A) states that, if a party "fails to obey an order to provide or permit discovery," the Court may issue further orders, including orders

> (i) directing that the matters embraced in the order or other designated facts be taken as established for the purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except and order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii).

Similarly, Fed. R. Civ. P. 16(f)(1) authorizes the Court to issue "any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii)," where a party or its attorney "(A) fails to appear at a scheduling or other pretrial conference; (B) is substantially unprepared to participate—or does not participate in good faith—in the conference; or (C) fails to obey a scheduling or other pretrial order."

In considering whether sanctions pursuant to Fed. R. Civ. P. 37 are appropriate, the Court must consider factors such as "(1) the willfulness of the non-compliant party or the reason for

11

noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Funk v. Belneftkhim*, 861 F.3d 354, 366 (2d Cir. 2017). "No single factor controls, and it is not an abuse of discretion for a district court to order a dispositive sanction even when not every factor weighs against the party to be sanctioned." *Aristidou v. Aviation Port Servs., LLC*, No. 18-CV-4040, 2020 WL 10317398, at *12 (E.D.N.Y. Feb. 21, 2020), *report-recommendation adopted*, 2021 WL 2471269 (E.D.N.Y. June 17, 2021).

"The aim of a sanction is (1) to ensure that the offending party will not be able to profit from the failure to comply[,] (2) to provide a strong deterrence to the noncompliant party and to others in the public[,] and (3) to secure compliance with an order." *M.B. v. CSX Transp., Inc.*, 299 F.R.D. 341, 346 (N.D.N.Y. 2014) (Treece, M.J.). "Striking an answer, like dismissal or entry of default, is a drastic remedy generally to be used only when the district judge has considered lesser alternatives . . . and it is only appropriate if failure to comply with discovery orders was due to willfulness, bad faith, or any fault of the party sanctioned." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 119 (S.D.N.Y. 2018); *see also Hutcheon v. Farnum*, No. 18-CV-0203 (MAD/CFH), 2019 WL 7971873, at *4 (N.D.N.Y. Nov. 4, 2019), *report-recommendation adopted*, 2020 WL 90786 (N.D.N.Y. Jan. 8, 2020).

## IV. DISCUSSION

As an initial matter, the Court briefly responds to Defendants' procedural argument that the Motion is incomplete based on Plaintiffs' failure to provide a certification that it conferred in good faith with Defendants regarding the discovery disputes. Dkt. No. 44 at 7. The Motion is brought pursuant to Rule 37(b)(2)(A)(iii) and (iv) based on an alleged failure to comply with a court order, as opposed to Rule 37(a), which pertains to motions to compel disclosure or discovery,

and therefore Plaintiffs were not obligated to provide any conferral certification alongside the Motion.  *See generally* Fed. R. Civ. P. 37.  However, the Court agrees with Defendants that the absence of a prior court order directing Defendants to provide discovery (pursuant to Rule 37(a) or otherwise) is significant, as discussed in more detail below.

Regarding the Parties' substantive arguments, the Court has fully considered the factors outlined above and finds that striking the Answer and granting Plaintiffs a default judgment (effectively ending the litigation) is inappropriate at this juncture.  Most notably, Plaintiffs fail to reference any specific court order with which Defendants failed to comply.  Pursuant to Second Circuit precedent, Plaintiffs cannot invoke Rule 37(b) for "failure to comply with a court order" where Plaintiffs never sought a court order compelling production and do not identify any court order that ostensibly was violated.  *See Salahuddin v. Harris*, 782 F.2d 1127, 1131 (2d Cir. 1986) ("The plain language of Rule 37(b) requires that a court order be in effect before sanctions are imposed.") (citing *Israel Aircraft Indus., Ltd. v. Standard Precision*, 559 F.2d 203, 208 (2nd Cir. 1977)).  To the extent that Plaintiffs rely on any oral orders that may have been issued during discovery conferences, Defendants dispute that such orders were ever issued.  *See* Dkt. No. 44 at 7.  Without, for example, a transcript from those proceedings, the Court cannot definitively conclude which position is accurate in that regard.  *See, e.g.*, *Penthouse Intern., Ltd. v. Playboy Enterprises, Inc.*, 663 F.2d 371, 383-84 (2d Cir. 1981) (finding explicit oral order issued during discovery hearing was sufficient to constitute a "court order" within the meaning of Rule 37(b) based on review of the transcript from discovery hearing); *see also Jones v. Uris Sales Corp.*, 373 F.2d 644, 647-48 (2d Cir. 1967).  While the analysis could end there, the Court chooses to weigh the factors outlined in *Belneftkhim* for thoroughness.

As to the first factor, Defendants could not have acted willfully or in bad faith against a court order if no court order was ever issued. Defendants have not, for example, been held in contempt of court regarding the Parties' discovery disputes or otherwise. *See, e.g.*, *Singer v. Allegiance Accounting Servs.*, LLC, No. 1:19-cv-01277, 2023 WL 9549931, at *2 (W.D.N.Y. Dec. 20, 2023); *Regan v. Hon*, No. 3:20-cv-00846 (BKS), 2021 WL 3603051, at *5 (N.D.N.Y. Aug. 13, 2021). And, as discussed, the Court cannot determine based on the record before it whether an order compelling Defendants to produce documents or other discovery was ever issued. Noncompliance is considered willful only if a party receives notice of a court order and repeatedly fails to comply. *See Coach Inc. v. O'Brien*, No. 10-CV-6071, 2011 WL 6122265, at *3 (S.D.N.Y. Nov. 28, 2011) ("The Court deems the noncompliance willful given that these orders were mailed directly to [defendant's] address, and yet she repeatedly failed to comply."), *report and recommendation adopted and modified on other grounds*, 2012 WL 1255276 (Apr. 13, 2012); *In re Fosamax Prods. Liab. Litig.*, No. 06-MD-1789, 2013 WL 1176061, at *2 (S.D.N.Y. Mar. 21, 2013) ("Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors beyond the party's control."). Without more, the Court is unable to find that this factor favors Plaintiffs.

Second, it does not appear that Plaintiffs ever sought a lesser sanction prior to their request to strike the Answer and for a default judgment. Indeed, it appears Plaintiffs have been seeking this level of sanction since at least January 2024, when Defendants' original counsel sought to withdraw. *See* Dkt. No 17. While the Court is "not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record," *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010), an answer is typically

14

stricken "only when the [court] has considered lesser alternatives," *S.E.C. v. Razmilovic*, 738 F.3d 14, 24 (2d Cir. 2013) (quoting *S. New England Tel. Co.*, 624 F.3d at 144).  Accordingly, this factor similarly weighs in favor of Defendants.

Third, district courts recognize that the duration of the period of noncompliance is measured by "the time between when discovery was due and when the Motion was filed." *Willey v. Town of Clifton Park*, No. 1:21-CV-877 (LEK/DJS), 2024 WL 3252592, at *5 (N.D.N.Y. July 1, 2024) (citing cases).  The date discovery requests were served is of no import to this analysis. *Id.* (citing *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 673 F. Supp. 3d 345, 361 (S.D.N.Y. 2023)).  Here, the Uniform Pretrial Scheduling Order did not set a deadline specifically for written discovery responses; instead, it only set a deadline for the close of discovery: November 29, 2024.  *See* Dkt. No. 31 at 2.  While Plaintiffs argue that "[t]he Court set July 12, 2024 as the deadline for Defendants to provide the discovery that was originally due in January," Dkt. No. 50 at 7, they again fail to cite record support for that proposition.  *See generally* docket sheet.[3]  Regardless, even assuming July 12, 2024 was the deadline for Defendants to produce certain discovery, Courts typically do not issue sanctions under Rule 37(b) where the period of noncompliance is shorter than four months.  *See Davis v. Rowe*, No. 10-CV-220 (LEK), 2011 WL 3159133, at *2 (N.D.N.Y. Jul. 26, 2011) (collecting cases supporting the finding that periods of noncompliance shorter than four months generally do not merit dismissal).  As Plaintiffs only filed the Motion in August 2024, this delay (if any) is too short to weigh in favor of dismissal.

Finally, while Plaintiffs contend that "[t]his Court held several conference[s] warning Defendants of the failure to meet their discovery obligations," Dkt. No. 40-4 at 8, Plaintiffs fail to

---

[3] Plaintiffs' counsel's affidavit addressing this proposition cites to Dkt. No. 30.  *See* Dkt. No. 40-2 at ¶ 7.  However, that docket entry simply referred the Parties to mandatory mediation and made no reference to a July 12, 2024 deadline for specific discovery.  *See* Dkt. No. 30.

reference any specific warning that was issued—whether through text order or otherwise—directly connecting the threat of dismissal to Defendants' discovery noncompliance. "Courts in the Second Circuit grant dismissal pursuant to Rule 37 only when a party has been specifically warned by the court that their claim could be subject to dismissal." *Willey*, 2024 WL 3252592 at *5 (collecting cases) (emphasis omitted). Based on the lack of record evidence in this regard, the Court is unable to find that this factor favors Plaintiffs.

Overall, Plaintiffs seek too harsh a remedy based on too scant a record. While the Court recognizes that discovery in this matter has been unnecessarily delayed at times, particularly based on defense counsel's absence from discovery hearings and apparent communication issues between Defendants and their counsel, the Court is "mindful that 'strong public policy favors resolving disputes on the merits,' and that, accordingly, 'judgment by default is a drastic remedy to be applied only in extreme circumstances.'" *Skyline Steel, LLC v. Pilepro, LLC*, No. 13-cv-8171, 2015 WL 999981, at *2 (S.D.N.Y. Mar. 5, 2015) (quoting *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 172 (2d Cir. 2001)); *see also New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (quoting *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001)). At this time, Plaintiffs have not shown that such extreme circumstances are present.

Although the Court declines to grant the requested relief, it will not countenance any further discovery delays in this matter. Accordingly, the Parties are hereby directed to meet and confer regarding any outstanding discovery immediately but no later than within fourteen days of the date of this Memorandum-Decision and Order. Thereafter, Plaintiffs shall promptly raise any outstanding discovery disputes with United States Magistrate Judge Paul J. Evangelista, who was recently assigned to this matter, *see* Dkt. No. 54, through, for example, a motion to compel.

Defendants are advised that any continued failure to comply with their discovery obligations could result in the entry of judgment against them pursuant to Fed. R. Civ. P. 37(b).

## V. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's Motion, Dkt. No. 40, is **DENIED**; and the Court further

**ORDERS** that the Parties shall meet and confer regarding any outstanding discovery within fourteen days of the date of this Memorandum-Decision and Order and thereafter promptly raise any further disputes with United States Magistrate Judge Paul J. Evangelista through an appropriate motion; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the Parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 10, 2025
       Albany, New York

_____
Anne M. Nardacci
U.S. District Judge